CHARLES C. JAMESON ET AL. V. ARTHUR M. BARTLETT.

FILED JANUARY 22, 1902.   No. 10,948.

1. **Deceased Suitor: LEGAL REPRESENTATIVE: SUBSTITUTION.** There is no authority under title 13 of the Code of Civil Procedure for the substitution of the legal representative, or successor, of a deceased suitor at the instance of a litigant having no interest in the controversy adverse to that of the party who died.

2. **Error: RIGHT OF ACTION.** Where a cause of action is pending in this court, on error, the right of action, within the meaning of section 456 of the Code of Civil Procedure, is the right to have the judgment of the district court set aside.

3. **Death of One of Several Parties: RIGHT OF ACTION: SURVIVAL.** Where one of several plaintiffs or defendants dies, in an action pending in this court on error, the right of action, if it survives to or against the remaining parties, may be enforced without bringing the representative or successor of the deceased party into the case.

4. **Right of Survivor.** When one of several plaintiffs in error dies the right to have an erroneous judgment against all of them reversed attaches to the survivors.

5. **Temporary Injunction: DISSOLUTION: EXPENSES: COUNSEL FEES.** Expenses necessarily incurred in obtaining a dissolution of a temporary injunction may be recovered in an action on the bond given under section 255 of the Code of Civil Procedure, and reasonable counsel fees are to be regarded as part of such expenses.

6. ———: ———: ———: ———: DAMAGES. But expenses paid or incurred for professional services in the general defense of the action are not ordinarily damages which the obligee of the bond has sustained by reason of the injunction.

7. **Bond: PROVISIONAL REMEDY.** The bond has relation only to the provisional remedy, and is intended to protect the defendant from the consequences of its wrongful use.

Jameson v. Bartlett.

8. Injunction: SALE PENDENTE LITE: INCIDENT. An injunction preventing a sale of property *pendente lite* is a mere incident of an action brought by creditors to have such property applied in satisfaction of their claims and to exclude other creditors from sharing in its proceeds.

9. Ancillary Injunction: COUNSEL FEES. Where the injunction was ancillary to the main action, it is error, in a suit on the bond, to submit the case to the jury on the theory that the services of counsel in trying the issues raised by the pleadings were rendered in getting rid of the wrongful restraint.

10. Review. Rulings of the trial court examined, and found to be erroneous.

ERROR from the district court for Dawes county. Tried below before WESTOVER, J. *Reversed.*

*Albert W. Crites* and *E. M. Bartlett,* for plaintiffs in error.

*Allen G. Fisher, contra.*

SULLIVAN, C. J.

This was an action by Arthur M. Bartlett against Charles C. Jameson, W. H. Reynolds and Andrew A. McFadon upon an injunction bond given under section 255 of the Code of Civil Procedure. As the result of a trial in the district court, plaintiff recovered the judgment which defendants are here seeking to reverse.

Before reaching the merits of the controversy a preliminary question must be disposed of. McFadon having died during the pendency of the case in this court, Jameson and Reynolds moved for and obtained a conditional order of revivor, which has been duly served upon Bartlett and the administratrix of McFadon's estate. The administratrix has made no appearance, but the authority of the court to make the conditional order absolute is denied by Bartlett. Section 460 of the statute on the subject of revivor of actions provides that the order of revivor may be made on the motion of the adverse party, or of the representative or successor of the party who died. We know

Jameson v. Bartlett.

of no provision in the law permitting the substitution of the legal representative or successor of a deceased suitor at the instance of a party having no interest in the litigation adverse to that of the party who died, and we believe no such provision can be found. The administratrix not having asked to be admitted into the case, and the defendant in error having resisted the application to make her a party, we are of opinion that the conditional order should not be permitted to stand. It does not follow, however, from this conclusion, that the cause may not proceed to judgment. The statute (Code of Civil Procedure, sec. 456) provides, in substance, that, where one of several plaintiffs or defendants dies, the right of action, if it survive to or against the remaining parties, may be enforced without bringing the representative or successor of the deceased party before the court. The present cause of action, that is, the right to have the judgment of the district court set aside, comes clearly within the provisions of section 456 aforesaid, and may therefore be tried and determined without making the administratrix a party. This is the construction which the supreme court of the United States and other courts have placed upon statutes substantially identical with ours. *McKinney v. Carroll*, 12 Pet. [U. S.], 66; *Moses v. Wooster*, 115 U. S., 285; *Clarke v. Rippon*, 1 B. & Ald. [Eng.], 587; *McGregor v. Comstock*, 28 N. Y., 237.

The question of procedure being out of the way, we will now consider the case upon the merits. The record with which we have to deal is not easily understood, consisting, as it does, for the most part, of a large mass of court files and other papers thrown together with admirable abandon, but without an index or suggestion in the briefs as to the utility or probative worth of any particular document. We have endeavored, of course, to winnow the evidence and lay hold of the essential facts; but it is a matter of regret, and perhaps a misfortune, that we have not had in this effort the assistance of counsel for either party. The action in which the injunction bond was given was brought by Hart Bros. and others, general creditors of the firm of G. B.

Smith & Son, against Arthur M. Bartlett, as sheriff of Dawes county, Nebraska; Leon B. Smith; Leon B. Smith as surviving partner of the firm of G. B. Smith & Son; Leon B. Smith as administrator of the estate of George B. Smith, deceased; Kate L. Smith as administratrix of the estate of Willard P. Bump, deceased; and the First National Bank of Missouri Valley, Iowa,—to enjoin an execution sale of a stock of merchandise, and for other purposes. It appears from the record, as we understand it, that in the summer or fall of 1894 G. B. Smith, of the firm of G. B. Smith & Son, died intestate and that Leon B. Smith, his son and partner, was appointed administrator of his estate, and continued for some time to conduct the partnership business in the city of Chadron. It also appears that Leon B. Smith, as sole surviving partner of the firm of G. B. Smith & Son, confessed two judgments on what purported to be partnership obligations,—one in favor of his mother, Kate L. Smith, and the other in favor of the First National Bank of Missouri Valley, Iowa. Upon these judgments executions were issued, and levied by Bartlett upon the whole of the partnership property. The petition in the action brought by Hart Bros. and other creditors to prevent a sale of this property under the executions, and for general relief, charged that the firm of G. B. Smith & Son was not indebted to either Kate L. Smith or the Missouri Valley Bank, and that the judgments confessed by Leon B. Smith were fraudulent, and were being used to prevent the plaintiffs from obtaining satisfaction of their claims. The relief prayed for, in addition to a preliminary injunction, was that the judgments be declared null and canceled of record; that Leon B. Smith, as administrator, be given possession of the property and directed to hold and administer it as part of his father's estate, and that the individual interest of Leon B. Smith in the property be subjected to the payment of claims in favor of partnership creditors. The defendants answered the petition and traversed nearly all of its material averments, but long before the case came on for trial the sheriff, acting under the direction of Kate

45

L. Smith and the Missouri Valley bank, released the property and restored it to the owner. It was then seized and afterwards sold upon executions and orders of attachment issued at the instance and for the benefit of the plaintiffs in the injunction case. A trial of the case of Hart Bros. et al. against Arthur M. Bartlett et al. resulted in a general finding and judgment in favor of the defendants. Before the trial there was filed a motion to dissolve the injunction, but for some undisclosed reason it was not ruled upon.

The present action was, it is clear, tried by the plaintiff and decided by the jury on the theory that all the services of attorneys for defendants in the original case were rendered in obtaining a dissolution of the injunction, and that the value of such services was therefore recoverable as damages resulting from the wrongful use of the provisional remedy. The law on the subject of damages in actions on injunction bonds is well understood, but the application of it is not always free from difficulty. The rule established by a multitude of decisions is that expenses necessarily incurred in obtaining a dissolution of the injunction may be recovered in an action on the bond, and that reasonable counsel fees are to be regarded as part of such expenses. But it is equally well settled that expenses paid or incurred for professional services in defending the main action are not ordinarily damages which the obligee of the bond has sustained by reason of the injunction. *Bolling v. Tate,* 65 Ala., 417; *Elder v. Sabin,* 66 Ill., 126; *Alexander v. Colcord,* 85 Ill., 323; *Robertson v. Smith,* 129 Ind., 422; *Bullard v. Harkness,* 83 Ia., 373; *Aiken v. Leathers,* 40 La. Ann., 23; *Lamb v. Shaw,* 43 Minn., 507; *Hovey v. Rubber-Tip Pencil Co.,* 50 N. Y., 335; *Newton v. Russell,* 87 N. Y., 527; 16 Am. & Eng. Ency. Law [2d ed.], 469, note 1. *Bullard v. Harkness, supra,* was an action by Prouty to enjoin a sale of real estate in execution of a decree of foreclosure, and to have the title quieted and confirmed in himself. He failed in the action, and suit was brought on the injunction bond. The court, denying the plaintiff's claim for attor-

ney's fees, said: "There was no direct attack made against the injunction. It was left to stand or fall upon the question of ownership; and, Prouty's title being found to be that of a trustee for the appellant, the injunction was dissolved. The costs and expenses incurred by appellant were in trying the issue of ownership, and are not different from what they would have been if no injunction had been issued. It is only such expenditures as were necessarily incurred in defending against the injunction that are recoverable on the bond, and expenses incurred in defending against other features of the case in which the injunction was issued are not included." *Lamb v. Shaw*, 43 Minn., 507, was an action on an injunction bond given to prevent an execution sale, and to annul the judgment on which the execution was issued. The court, speaking through Vanderburgh, J., said that there could be no recovery for the services rendered in the trial of the case on the merits. Part of the argument supporting the conclusion reached was this: "If, as would seem to be the case, the question involved was the validity of a judgment upon which the execution sale was sought to be restrained, the determination of that question would not necessarily cease to be important or material to the plaintiff's rights in that suit, though the sale was not temporarily restrained, and he might be embarrassed and prejudiced by the proceedings. Presumptively, therefore, the litigation in the principal action would proceed and be determined on its merits, though no temporary injunction had been issued. * * * The plaintiff was entitled to recover damages shown to have been suffered by him by reason of the preliminary injunction, but we do not think the counsel fees sued for in this action can be properly included therein." In *Lambert v. Alcorn*, 144 Ill., 313, which was an action brought to obtain an injunction, and for no other purpose, it was held that expenses incurred for services of counsel in the trial of the case, although the trial resulted in a dissolution of the temporary injunction, were not recoverable as damages occasioned by the wrongful restraint. The court, speaking

through Bailey, C. J., said (p. 330) : "Perhaps the view was entertained by court and counsel at the time of the assessment of damages, that as the only relief sought by the bill was an injunction, the entire defense was virtually directed to the sole object of procuring a dissolution of the injunction, and therefore that all the services rendered in the case must be deemed to have been rendered for that purpose. The relief sought by the bill was a perpetual injunction restraining the defendant from laying his proposed tile drain, and an injunction-*pendente lite* was a mere ancillary writ which the complainant was at liberty to apply for or not as he saw fit. Its only office was to preserve the *status quo* until a final hearing could be had. The complainants might have prosecuted their suit without asking for a preliminary injunction, and if the defendant had proceeded to construct his drains during the pendency of the suit, he would not have been in contempt for disobedience to a writ it is true, but he would have acted at the risk of having his acts *pendente lite* declared illegal, and of being compelled to restore everything to the condition in which it was at the commencement of the suit. In a litigation of this character, the services rendered in the general defense of the suit are as clearly distinguishable from those rendered for the mere purpose of getting rid of an injunction *pendente lite,* in case one has been issued, as they are in cases where relief of a different character is sought." *Trester v. Pike,* 60 Nebr., 510, was an action to establish a judgment as a lien upon land which it was claimed had been fraudulently conveyed. The judgment defendant and the alleged fraudulent grantee were made parties, and a restraining order was granted to prevent a transfer of the property. In a trial upon the merits the plaintiff was defeated and the defendants then brought suit upon the bond; but they were not permitted to recover counsel fees, although the right to the injunction and to the principal relief sought depended precisely upon the same question,—that is, the character of the transfer assailed. "We think it entirely clear," says HOLCOMB, J., in the course of the opinion,

"that the restraining order was auxiliary only to the main proceedings, and without deciding what would be the effect in case an injunction had been regularly issued, we are of the opinion that it was erroneous to instruct the jury to allow the expenses incurred for counsel in the trial of the issues raised by the pleadings as one of the elements of damages sustained by the defendants by reason of the wrongful issuance of the restraining order." Other cases aptly illustrating the principle upon which attorney's fees are allowed in actions upon injunction bonds are *Curtiss v. Bachman,* 110 Cal., 433; *Grove v. Wallace,* 52 Pac. Rep. [Colo. App.], 639. Where no bond has been given, a party wrongfully enjoined can recover nothing more than the taxable costs, unless he can show that the action was maliciously prosecuted. The bond has relation only to the provisional remedy, and is intended to protect the defendant from the consequences of its wrongful use. If in the case of Hart Bros. et al. against Bartlett et al. the expenses incurred were for services rendered by attorneys in trying the issues formed by the pleadings, and were such as would have been made regardless of the injunction, then it can not be said that they were the result of the injunction, and consequently are not recoverable as an element of damages. The principal object of the action against the obligees of the bond in suit was, as we have already indicated, to have the partnership property applied to the satisfaction of the plaintiffs' claims, and to prevent Kate L. Smith and the Missouri Valley bank from sharing in the proceeds of that property as partnership creditors. The office of the injunction was to preserve the *status quo,* so that if the plaintiffs were successful, their judgment might be made effective. Prevention of a sale under the executions was obviously not the substantial relief sought. That relief was important, it is true, but it was nevertheless incidental and ancillary to a cancelation of the judgments and a division of the property among creditors other than Kate L. Smith and the Missouri Valley bank. When Mrs. Smith and the bank released their levies, and the sheriff seized

and sold the whole of the partnership property for the benefit of Hart Bros. and other creditors, the temporary injunction lost its force and effectiveness; it ceased to have any practical significance; its occupation was gone; it was a mere reminiscence; and the expense thereafter incurred by defendants for attorneys' services was not made in attempting to escape from a wrongful and injurious restraint. The judgment dismissing the action after a trial on the merits was, of course, a technical dissolution of the injunction, but it delivered the defendants from no real bondage and gave them no freedom of action which they did not possess before the trial commenced. If the defendants tried the case for the purpose, as they claim, of getting rid of the injunction, then, indeed, they went to a great deal of trouble and expense to free themselves from a harmless restraint. Since the injunction, at the time the case was tried, prevented the defendants from exercising no right which they might lawfully exercise, it would seem, on plaintiffs' theory, that the expense of the trial was incurred for the purpose of obtaining evidence to show that the restraint, during the time it was effective, was unjust. The objections made by counsel for defendants in this case to the introduction of evidence tending to show the value of attorneys' services in the trial of the injunction suit were clearly valid, and should have been sustained, and the instruction which he tendered relative to the same matter should have been given.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.